On the sentencing issue, mainly the applicability of the Supreme Court decision in Johnson v. United States to the career offender sentence imposed here. And if I have a little bit of time left, I'll talk about the stipulation issue. The way things have sort of shaken out is the government has always agreed that Johnson v. United States applies to the career offender residual clause. They haven't been opposing that at all. But this circuit, until recently, has indicated that under the Wivel decision, vagueness challenges don't lie as to sentencing provisions. But as Judge Murphy, and I'm sure all the panel members know, but especially Judge Murphy and Judge Colleton, from the Taylor decision decided October 9th, there's a panel of the circuit now that has held that a vagueness challenge can go back and be made in the district court. And that Johnson can be argued there. So that would seem to resolve it. Why does that resolve it if the opinion just said it can be raised? Well, under Taylor it would be remanded, and then the appellant could make the argument there that Johnson applies. But at least the panel held that Wivel doesn't bar those challenges. But life is never that easy. The government says, well, we don't really care whether Johnson applies, but, you know, it's irrelevant here because we are now going to bring out the alternative holding in the Stymius case. And as the panel may recall, in Stymius they upheld the use of the career offender 4B1A point. The alphabet soup there is eluding me now. 4B1.2. Yes, thank you, Your Honor. Burglary of a dwelling, is that what you're referring to? Yes. And the government or the court there relied on the residual clause to say that the third degree burglary conviction counts as a crime of violence. But they said that even if it didn't, we're going to now say that the other part of that clause, which says one of the enumerated offenses, residential burglary, that that doesn't mean residential burglary. It means we're now holding alternatively that it means generic burglary. So we're reading that limitation out. Forget about residential burglaries. It says that. It doesn't mean that. Now, since then, no court has ever relied on that alternative holding. It's just sort of been out there. We're asking the court not to rely on it now. Do you think it's binding on us, or do you think it's dicta? I think it's dicta, and I think there's at least five or six reasons why it does not and cannot apply. The first is that the panel makes a sweeping statement that Taylor v. United States invalidated that enumerated, the part of the enumerated offense, residential burglary, to mean generic burglary. Taylor did not even address that sentencing guideline provision. So it's a huge leap to say that Taylor, which was just simply trying to decide how do we define burglary, what method are we going to use to say what burglaries count. And they adopted a categorical approach. They didn't even go anywhere near the career offender provision. And it may be, I agree, it may be somewhat inconsistent because, as pointed out in Bell and also in Stymius, the armed career criminal provision is designed to give repeat offenders a long sentence. And the enumerated or the career offender provision was borrowed from that. It uses basically identical language except for residential burglary. So I agree there might be somewhat of an inconsistency there, but how do you, without addressing Congress's right to have sentencing guidelines and the sentencing guidelines decision to say, we're not going to go with that part of the definition. We're going to say residential burglary. We're not going to completely mimic the armed career criminal provision. Now, there's good reasons why they get to do that and the fact that Congress could have changed that. If Congress said this is intolerable, you've got to have the career offender provision read exactly like the armed career criminal provision. Congress could have rejected that. They didn't do that. So there's authority for saying this is valid. They get to do that. And if you want to change it, you've got to have a case that comes up, the government appeals, and says no, the enumerated statement that residential burglary just means generic burglary needs to be litigated on its own, not just sort of snatched from a distance in a case that isn't even considering where that issue wasn't even raised. And that's the other part of it. In Stymiest, the government never brought up the fact that enumerated burglary has to be read now in light of Taylor to mean generic burglary. That wasn't done. And courts normally don't decide issues that aren't presented to them. And so just creating an issue out of whole cloth and saying we're going to decide this now goes beyond what a court can and should do. The other problem is even if the court had procedurally the basis to reach that issue, the reasoning just doesn't hold up. They said that, well, under LeBant, we can overturn sentencing guideline decisions. Well, if you look at what happened in LeBant, it wasn't anything like what happened here. In LeBant, the issue was the Sentencing Guideline Commission had ignored a statutory directive from Congress saying that the maximum term for purposes of calculating a career offender sentence includes any statutory enhancements. That's right in the statute. They had to consider that. They didn't. So the Supreme Court said in LeBant, this is in direct conflict with a statutory directive from Congress. We're going to overrule that guideline provision. You've got to include statutory enhancements in determining what the maximum sentence can be. That's not what happened here. Now, there's a directive from Congress saying that you should sentence repeat offenders at or near the statutory maximum. But it is certainly within the Guidelines Commission's discretion to decide which repeat offenders should be subject to that. They're not saying, no, we're not going to do it, as essentially they did in LeBant. They said, no, for this category, we're just going to say residential burglary. So I hear your argument about why this discussion in Stymiast is wrong. Can you spend a minute on why you think it's not controlling on this panel? One reason is the parties didn't raise it, and it wasn't briefed, and it wasn't argued. Well, that doesn't appear in the opinion. The opinion doesn't say anything like that. The opinion has words. So address the words of the opinion. Well, in Stymiast, they do make the statement that the government didn't even cite Bell. And Bell was where this idea of having an alternative holding. And the court sort of chides the government counsel for not bringing it up. But it's also part, I think, of the record this court can consider what's in the briefs and what was said in oral argument. And I went back and I listened to the oral argument. It never came up. The government never said, oh, by the way, you should have an alternative holding. And what you said in Bell, you should make that the rule now. And the court never even brought it up. The court never said, as I listened to it, and I agree that sometimes these arguments are a little choppy and hard to hear, but no member of the panel said, well, wait a minute. How about if we bring Bell in here. So I assume that the panel just brought it up on its own and wrote it the way it wrote it. Yes, without any input, never being raised. Does that mean that it's not controlling? I mean, if that had been the only basis for the decision, I don't know how you would argue that it's not controlling. It seems to me your only possibility here is that because it was secondary, maybe there's some argument that it was unnecessary to the decision and therefore is not controlling, but they phrased it at least as an alternative, quote, holding. Well, I know this goes to sort of attacking the logic for the position, whereas I think you're talking about the procedural. Yes, I'm talking about the precedent and whether the prior panel rule applies. Well, I don't know of any precedent for saying we can have these holdings that remain dormant and then spring to life after new precedent. You know, if you read what Stymia says, it says, alternatively, if Begay requires a different result, then we hold this forecast in Bell. You say it's contingent and therefore dicta. That would be the argument, I suppose. Yes, in other words, they're saying in the context of Begay. They didn't say, oh, well, we're going to envision Johnson v. United States, which raised an entirely different basis for invalidating that. So it's in that context. And I don't think it's just terrible policy to have these alternative holdings, never briefed, never argued, just lying out there. And now you've got the Supreme Court that says, no, this clause is invalid, but now we're going to uphold it under this basis. It ought to be litigated on its own. And I guess that's the best point I can make about that. And no other circuit has done that or has the alternative holding. And, again, it's never been cited. It's not as if there are people who are serving sentences based on this alternative holding. That's never been cited at all. And the other circuits, the 1st, 10th, and 9th have cited my supplemental brief. They've agreed that, no, we're not going to allow enumerated burglary to mean or residential burglary to mean just generic burglary. Did they comment on the Stymius case or in those opinions? I believe, I think Stymius is cited. I'm a little. Okay. We'll look at it. Some of these cases may have predated Stymius, so I can't be positive about that. Thank you. Good morning. Good morning. Mr. Dunwall, good morning. I'm just touching, I think. I'm the tail of the line here. So I just wanted to touch on some specifics with Mr. Benedict. The government, in its response to our motion and our claim of insufficiency of evidence, indicated that the informants alone, their testimony was sufficient to justify the verdict. And I think that it has to be noted that that's because they were consistent. They all told the same story. And they were believed, obviously. We also had raised an issue of severance. And I think the court certainly, in reviewing this case, would note that the last evidence in this case was a videotape of my client's co-defendant burglaring a gas station alone. And it was a very effective video. It was very interesting and had absolutely nothing to do with my client. The government, in closing, decided, I think, or maybe really highlighted the problem with the lack of severance. And that is, the government said, the fact is that these defendants steal and they steal together. They steal with each other and they steal with Tim Kelb. They steal with Jason Mussel. They steal with Cher Mayotte. They steal with Jonathan Quast. They steal with Julia Julian. And they steal with Jennifer Stanley. What about the limiting instruction? The limiting instruction is simply inadequate. I mean, it just is. As I'll touch a little bit, I guess, with regard to the expert witness we requested, part of his testimony and his research is that juries believe witnesses that the court allows to testify. That's proof to the jury that this is true. But sometimes the witnesses disagree. So what did your expert say then? Well, I think he would say that there the jury has seen two honest opinions, perhaps, or two differences of opinion. But I think the research. And we trust the jury. Right? If there are two. Yes. Yes. But I think that that, and certainly to me it was very startling. Juries believe that these witnesses have been vetted. So they're truthful. And I think that jumps to the other issue, the expert witness. We asked to have a hearing pretrial on course testimony to bring the expert in and allow the judge to take a look at the expert and determine under the gatekeeper role whether he had valid evidence to produce. That was denied. We then asked to produce him a trial under the idea that we had a right to a defense under Crane. That was denied. And I think most interestingly there, it was denied and the judge said that she had to balance the prejudice of such testimony. And I'm left wondering who the prejudice was to of allowing this gentleman in to testify on these presumptive factors that juries carry. In whole, the lack of severance, the lack of the expert witness, the lack of an ability to put on a defense that we were asking to put on, I think leaves us with cumulative errors under Stephan that in and of themselves, each and every one, perhaps not. But total? Yes. Thank you very much. Mr. Lackner. Thank you, Your Honors. May it please the Court, Counsel, my name is James Lackner. I'm not the attorney who tried the case for the government, but I did write the brief, and I am familiar with the record having written that brief. I was going to start off immediately with the Johnson issue. I would like to just touch on these others if it's okay with you, because otherwise I think I'll forget to come back to them later. Just as it relates to Mr. Benedict, the defendant's argument as to severance fails for a number of reasons. There's significant public policy that's recognized by this Court and every circuit that's addressed the issue that if you've got co-conspirators jointly indicted, they should be jointly tried. It's up to the defendant in an appeal to show that there was some significant or severe prejudice. That has not even been alleged here. The Court, we cite the Mann case. The Court, this Court has recognized limiting instructions are sufficient. The very same instructions upheld in the Mann case were the ones used by the district court here. So there really is no issue as to severance. As far as sufficiency, you had five testifying co-defendants testifying about Mr. Benedict. Not only was their testimony by itself sufficient, but we also, as I outlined in the brief, introduced corroborating evidence. Unless you have any questions about that, I'm not going to go any further on sufficiency.  Just on the statement made here by Mr. Dunwald, when the Court asked Judge Benton, what happens if you've got two government witnesses who give conflicting testimony? Or government defense. That's what I was thinking of. Go ahead. The point is his response was the expert would then say they were both honest. My response to that is that's exactly the problem. You can't have an expert witness get up and tell the jury, yeah, these folks are honest. The case law is crystal clear that expert witnesses are not permitted to testify about the honesty, the veracity of witnesses. That's something that's uniquely left to the role of the jury. He would have infringed on that role. It would not have, under the language used in these cases, have been of any assistance to the jury. And in a nutshell, I think that's where we stand. So unless you want me to answer any other questions about the other issues, I thought I'd get into the Johnson issues. First of all, the government's position is that Johnson does apply to the sentencing guidelines on direct appeals. And we base that, as I know you all are familiar, having Judge Murphy and Judge Colleton been on it. We're not familiar because the government filed a one-liner that gave no reasons in that case. In Taylor? Yes. If there's a reason for the government's position, it'd be helpful to know it. I'd be happy to deal with that. First of all, Your Honor, when you look at the prior case law of the circuit, Wivel specifically is what I'm referring to, which held that the guidelines aren't susceptible to a vagueness challenge. And a chunk of that decision was based upon the fact that these are not, the guidelines don't prescribe certain conduct. What they do is they relate to sentencing. Johnson was very clear, Justice Scalia in writing the opinion stated that statutes which deal with punishment can also be susceptible. Well, so you're attributing to Wivel ignorance of that basic point that was settled in Batchelder in the 1970s, that vagueness applies to sentencing statutes? You think Judge Bowman's opinion was ignorant of that and thought it didn't apply to sentencing? I certainly am not saying that. Well, I thought that's what you just said. The opinion was about conduct and not sentencing. What I'm trying to say, Your Honor, is that conduct, that sentencing issues, it was made clearer then in Johnson that statutes which don't deal with conduct but which deal with sentencing, it was made clear that they are susceptible as well to vagueness challenges. Now, granted, what Justice Scalia wrote in the opinion was statutes. And I realize that there's some issue, okay, what about the guidelines? That's the whole issue. Well, I think that that issue has got to be informed by the prior Supreme Court decision in Pew. And I realize we're dealing with ex post facto analysis, but the fact of the matter is the argument that the government made in favor of not applying the ex post facto clause to the sentencing guidelines is, look, you've got guideposts rather than fences. They're very broad. The judges have a lot of discretion. These really don't have the force and effect of, you know, a statute which sets certain punishments because it's so broad. And the Supreme Court had none of it. And they said, look, under the federal system, everything in sentencing starts with the sentencing guidelines. Therefore, they have that effect as a statute would. And therefore, that's the basis of the government's position between Pew and Johnson that the guidelines are, that Johnson does on direct appeal apply to the guidelines. I'm not sure I can go any further than that, but I'm happy to answer any questions you might have about that before I jump to the next issue. So you think then that every guideline is now subject to a vagueness challenge and we'll have to address whether sophisticated means is vague and whether minor participant is vague. No, I. Why not? Well, my response. It's the government's position. You may say those are not vague, but we're going to have each one litigated. It sounds like. Well, I would not take that position. What I would say is given the finding or holding, excuse me, by the Supreme Court that the language in the residual clause is vague. And the fact that the language in the residual clause of the career that this court and every circuit, which addressed the issue prior to Johnson said, we interpret these two provisions because they're worded the same as equivalence that in this case it's applicable to look at another section of the guidelines. I would say that that argument wouldn't have just doesn't hold water. It doesn't have the same. There's no statute on sophisticated means, but once you say that the guidelines are susceptible to vagueness challenges, my only point is each one of those now has to be litigated individually as to whether it's vague or not. Is there some reason why the other ones would not be susceptible to vagueness challenges? I was the top of my head. I'd have, well, I'd have to think about that. I don't have an answer off the top of my head. I think of a reason. I mean, you might argue that each of those is not vague on the, you know, on the, on the question of whether it's vague or not, but I don't know how I could avoid litigating each of them. Once you say. I'm reluctant to agree only because if this court and other courts adopt a government position, I may be up here at some other point arguing that they don't apply and this is why, but I don't know yet.  But you can talk about the slippery slope with the issue in front of you, right? I do. Well, I mean, not in this case, but I, but let me, let me talk about something that's more important, at least to me. If you look at the end of stymies, it has the, if clause, if the gay requires a different result, we hold. Okay. Doesn't the, if the gay completely undercut your position that we apply that to resolve this case? No. Why not? Because it's not the word. It didn't say if a later case, if Johnson, if doctrine. Let me, you have to look at both cases. And what I would say to you is yes. The issue. Number one is, are we dealing with precedent that's binding on the court? You look at bell. It is clear that the court knew how to say this was dicta. If that's what it intended. That's what bell did. Bell goes through a long legislative analysis of the comparability of 924 E and the requirement set up by Congress to promulgate the career offender statute under nine 94 H. They go through a long analysis. And then the court says, if we had to decide on this basis, we would strike the language, but we don't have to because we've got the otherwise or the residual clause. Okay. Court knew how to say, this is dicta. That's what it said. Then they get, then the court in the subsequent cases time is dealing with the big issue. And whether that impacted under the residual clause, the commercial burglary question. Didn't use that language. And it's the same author. It's it's judge Loken. So he knew if it was going to be dicta, how to say it, they could have done it the same way, right? Because they'd already decided the case in Stein. Yes. On another ground. They could have, but they didn't. And that's the important point, whether they use hold or would hold changes, whether it's binding language is important. What about the, if he starts a sentence in the word, alternatively starts a sentence. I, I understand that. And that create, I get your point, but if the gay requires a different result, we hold. Not, we would hold. We hold. More importantly, as forecast, as forecast says, what do you think happened in bell chives? The USA for not raising it. What do you think happened in bell? This is where we're going. And to me, that has a dignity, not of dicta, but rather of an actual holding. We hold. And arguably it's only a holding. If the gay requires a different result, none of the otherwise involves provision. And if we think now the gay did not require a different result, then well, one under one on the languages under either of these alternative holdings. So to me, again, that equates to two, two. If you look at it, and I said, I told myself I wasn't going to raise this, but I remember properly. And springing executory interests and things like that to pop up. I get, I get the notion, but the point is that if it's the gay, if it's Johnson, if something, the point is, but gay would have invalidated the application of the residual clause to commercial burglary. That's what the court, the court saying, if that happens, this is what else happens. You've got Johnson, which did exactly the same thing. Why does that undercut this provision? You've got Johnson saying, look, the residual clause is no longer applicable. And therefore under the analysis of Stein is you've got to apply that all. If you want to call it, well, it is, and it's an alternative holding, but it is the government's position on the merits of that. Now, the government never raised this in bell. It never raised it in Stein. Yes. No other circuits adopted it. The language in once in the statute is violent felony. The language in their career offender provision is crime of violence, different words. Uh, I think you're wrong to say that we've equated the two in every case. We've said in some cases that because the commentary and the guidelines is not in the statute, the meanings can be different. What's your view on whether this, uh, alternative, whatever you want to call it is correct. I, we believe it is correct. And for this reason, I, what was written in bell and then reiterated in stymiest was that in 1984, in the same year, Congress passed two statutes, which were intended to serve the same congressional, had the same congressional purpose that you have a situation where Congress wants to address, repeat serious, violent, also drug, but drug doesn't enter into this violent offenders. And that if you have two statutes, which address essentially the same issue, which is what the court said in dicta in bell. And then by adopting that same reasoning in the alternative holding held in stymiest, those two are equated. And if those two were equated, the question becomes as judge Loken stated in stymiest or in, in bell, don't you have to take the equivalent statutory terms and treat them as equivalence? Why are they, why are they, why do we conclude that they're equal or must be equal because the congressional purposes to both statutes was the same to deal with career with, with repeat violent offenders. And that was, and the question he dealt with is look, and this is why he's, he cited Levant not for the purpose of justifying the ruling here, but to show that the court had jurisdiction to consider the guy, the guideline issue to begin with, because that was a question apparently at the time that bell was written, but essentially the holding was, or the dicta and bell was that the commission was without authority to go further than generic burglary. And that when you have a Supreme court decision, interpreting nine 24, the equivalent congressionally equivalent, as far as purpose, if, if the Supreme court said that that was generic burglary, that was to be addressed, which would include commercial burglary, then you also have to do the same under the career offender, that the career offender guideline that the commission was without authority to restrict it. And yes. So the answer to your question is the government does believe it's good reasoning and that we go to, as to the merits, I see the Mike got my red light on. I don't know if you want me to answer any other questions. Well, if anybody has a question, you're going to ask it. Thank you. Thank you. Okay. Mr. I think I've used all my time. Is that correct? Do you want a minute? Well, yes, just very briefly on the issue of the, the stipulation, you know, and I, Jeff Murphy, you offered the Martin opinion where I raised the same issue. And I said that these, these stipulations need to be inquired into. And I don't think it's that hard a thing to do. At least in Martin, the defendant signed the stipulation, the court didn't make an inquiry. And I said, the court should have made an inquiry here. It's gotten even worse. The lawyer signs a stipulation that just stipulates to scads of elements. And maybe none of them was at issue. I mean, great, fine. I'm not saying no, you don't have stipulations, but it's just creating a, I think a very bad practice to have just the lawyer sign a stipulation without even asking the defendant. Well, how do we know that from this record without even asking the defendant counsel? Well, it, the court made no inquiry. You said without, Oh, you mean without the court asking? Yes. Subject to your sentence was counsel, but that's what got me going. Go ahead. It may well have been discussed by counsel, but it's an important safeguard to have the court asked because sometimes lawyers have their own agenda. They don't want to defend all these other things. Maybe there's good issues. They're just lazy. They want to get rid of it. They want a fast trial. Um, just ask a few questions. That's basically all we're saying. And I think this court's precedent, uh, makes that appropriate. Thank you. Mr. Dunwall, did you use all your time? I did. Well, thank you all. This is a, not an easy area to perfect. Thank you.